## MASSACHUSETTS FEDERAL DISTRICT COURT
Boston Division

| | |
|---|---|
| UNITED STATES,<br><br>v.<br><br>MARK SAHADY, | Case No.: 21MJ7005<br><br>MOTION TO HAVE MARK SAHADY RELEASED ON HIS OWN PERSONAL RECOGNIZANCE<br><br>MOTION TO HAVE SAID RELEASE WITHOUT RESTRICTIONS ON FIRST AMENDMENT ACTIVITY |

HERE COMES MARK SAHADY

1. Whereas, pursuant to 18 USCS § 3142(a)(1), this court may release the defendant Mr. Mark Sahady under his personal recognizance;

2. Whereas, Mr. Mark Sahady was arrested in the District of Massachusetts but the offense was allegedly committed in Washington, DC;

3. Whereas, Attorney Rinaldo Del Gallo (counsel for Mr. Mark Sahady) spoke to the Honorable United States Attorney William Bloomer on Wednesday, January 20, 2021 by telephone, and Attorney Bloomer has indicated that he has no objection to Mr. Mark Sahady being release from detention (while there are disagreements as to the terms);

4. Whereas, Mr. Mark Sahady is not a flight risk because:

    a. Mr. Mark Sahady is only being charged with two misdemeanors and while any charge is "serious," these types of crimes are not the kind likely to cause one to take flight because the cost is so high (one has to remain in hiding in fear of being caught, and risking being put back in detention), and the benefit so minimal because they are the penalties associated with misdemeanors.
    b. Mr. Mark Sahady has lived in the area for a very long time and is rooted in the community.
    c. While currently unemployed, Mr. Mark Sahady is a skilled computer programmer, has had a long history of employment, and obviously would not want to do anything that would jeopardize his successful career just to flee from two misdemeanor charges.
    d. Mr. Mark Sahady is a military veteran and served his country, and is an honorable person.
    e. Mr. Mark Sahady resides with his parents in Massachusetts, and is very connected to both and would not want to be separated.
    f. Mr. Mark Sahady has not been convicted of a crime, nor has he "CWOFed" (Continuance without a Finding) to one.
    g. Mr. Mark Sahady has no history of flight.
    h. Mr. Mark Sahady has no known outstanding warrants.
    i. Mr. Mark Sahady has been charged with 18 USCS § 1752(a)(1) and (2)(

5. Whereas, the 18 USCS § 3142 (g) statutory factors militate in favor of Mark Sahady's release on personal cognizance;

(1) With respect to "the nature and circumstances of the offense **_charged_**,[1] including whether the offense is a crime of violence, a violation of section 1591 [18 USCS § 1591],[2] a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device," none of these factors apply."

    a. Mr. Mark Sahady was not charge with a violation of section 1591,

    b. Mr. Mark Sahady has not been charged with a Federal crime of terrorism,

    c. Mr. Mark Sahady has not been charged with a crime that involves "a minor victim or a controlled substance, firearm, explosive, or destructive device."

(2) With respect to "the weight of the evidence against the person;"

    a. It has been said by courts, "the weight of the evidence is the least important of these factors." *United States v. Winsor,* 785 F.2d 755, 757 (1986).

    b. That said, it is to be assumed "the weight of the evidence against the person" is a consideration because people more likely to "beat" the charges are less of flight risk.

    c. The evidence against Mark Sahady is relatively weak, at least that in the "Rule 5" packet. It consist of:

        a. A statement of the fact there was illegal activity on the Capitol on January 6, 2021, which is information abundantly of common knowledge and the subject of countless media attention.
        b. There are "tweets" presumably from the Twitter account of Mark Sahady that merely state that buses are being organized to Washington, DC to protest the certification of the presidential election—nothing could reasonably be construed as a threat, plan, or effort to engage in illegal activity. Moreover, this was clearly activity protected under the First Amendment.
        c. There are photos of what appears to be Mark Sahady outside the United States Capitol building, and then a photo of what appears to be Mark Sahady in the interior of United States Capitol building

    d. The evidence against Mark Sahady is relatively weak, at least that in the "Rule 5" packet by what is absent:

        a. It does not consist of any "smoking gun" evidence that there was "any posted, cordoned off, or otherwise restricted area" that would have been in any way visible to Mr. Mark Sahady or was actually in place when Mr. Sahady entered.[3] There is but

---

[1] "Charged" is a key word. It cannot merely be that others at the Capitol on January 6, 2021 committed acts of violence. Rather, the words of the statute are clear—the court may only consider with what Mr. Mark Sahady has been charged.

[2] Child sex trafficking.

[3] 18 USCS § 1752 "statue makes unlawful a persons' willful and knowing entrance into an area restricted by the Secret Service to protect the Vice President." *Blair v. City of Evansville,* 361 F. Supp. 2d 846, 862 (2005). In *Blaire,* there were "no evidence that any 'regulations' were in place to govern the ingress and egress to the venue," *Blair v. City of Evansville,* 361 F. Supp. 2d 846, 863 (2005), and an action for violation of 18 USCS §

2

an observation by an FBI agent in the "Rule 5 packet" that 18 USCS § 1752 defines the term "'restricted buildings or grounds' means any posted, cordoned off, or otherwise restricted area"—and then there is but the only most general statement that the Capitol building was putatively "closed" that day in areas that are otherwise generally open to the public, without relating how it was still supposedly "posted, cordoned off, or otherwise restricted area" when Mr. Mark Sahady walked through the doors. Nor is there any "smoking gun" evidence that Mr. Mark Sahady did not leave when asked to do so by the police. Given the mass of humanity that entered through the US Capitol building's doors, it is highly unlikely there will ever be any proof that Mr. Mark Sahady entered a "posted, cordoned off, or otherwise restricted area" because the only proof would be a claim that such was the way it was left in the morning, or that in the highly unlikely event that it was cordons or signs were still somewhere in the Capitol building, that it would have been such that Mr. Mark Sahady saw it when he walked in. It is by now widespread common knowledge that eventually, at some time, the US Capitol was opened to the public by police.[4]

---

1752 would not lie. In that case it was ruled that no reasonable police officer would have probable cause to arrest for "violation of 18 U.S.C. § 1752." *Blaire,* 361 F. Supp. 2d at 863. When Mr. Mark Sahady entered the Capitol there was no evidence to indicate "that any 'regulations' were in place to govern the ingress and egress to the venue." In fact, there has been national commentary on the accommodating conduct of the Capitol Police. Mr. Mark Sahady just walked into the interior of the Capitol, a place that is usually open to the public, and the Capitol Police were pleasant and accommodating. Nor did Mr. Sahady attempt to enter the chambers of the House or Senate, whether on the floor or the balcony area. Courts have frowned on arrest under "novel theories" where arrest under 18 U.S.C. § 1752 have been attempted. *Id.*

There is no doubt that things were said about Congress and the Vice President that many would feel are patently offensive. "As a general matter, we [the SCOTUS] have indicated that in public debate our own citizens must tolerate insulting, and even outrageous, speech in order to provide adequate breathing space to the freedoms protected by the First Amendment." *Madsen v. Women's Health Ctr.,* 512 U.S. 753, 774 (1994). Congress may constitutionally protect the Vice President so that he may perform his function as President of the Senate. They cannot create "buffer zones" so expansive that meaningful protest is impossible.

[4] https://www.youtube.com/watch?v=lX2gQsQElJY  "Capitol Police OPEN GATE for Trump Protesters: DC Lockdown RIOT COUP in Washington Inside Job!?", Youtube, January 6, 2021, retrieved Thursday, January 21, 2021.
Start watching 4 minutes in to 6 minutes in: Jimmy Dore, "Capitol Stormed by Protestors! Trump's Twitter Suspended!" January 7, 2021, retrieved Thursday, January 21, 2021. https://www.youtube.com/watch?v=suo7bZiDZU8&t=590s

These links are not provided for the political commentary, often it is way, way off. But there is clearly extant film footage of police taking selfies with people that entered the Capitol building, apparently one photo of a Capitol police officer wearing "MAGA hat," video footage of Capitol police officers just letting people in, and footage of people in the Capitol without police making any obvious effort to get them to leave. US News and World Report has a story, "2 Capitol Police Officers Suspended, 1 Arrested Amid Investigation Into Cooperation With Mob" published January 11, 2021, retrieved Thursday, January 21, 2021.

TMZ has a video in its article, "CAPITOL INSURRECTION FBI INVESTIGATING INSIDE JOB …Capitol PD, Building Staff Under the Microscope," published January 8, 2021, retrieved Thursday, January 21, 2021. https://www.tmz.com/2021/01/08/capitol-insurrection-fbi-inside-job-capitol-police-staffers-rioters/ Yet again police are just letting people in.

This is not to say there wasn't violence—there were many videos of acts of violence at the Capitol on January 6th. But there is also a lot of video, and photos, and news articles about the police letting people in. In fact

3

      b. It does not consist of any "smoking gun" evidence that Mr. Mark Sahardy violated 40 USC §5104(e)(2)(d), "disorderly conduct on capitol grounds." USC §5104(e)(2)(d), makes it illegal to "utter loud, threatening, or abusive language, or engage in disorderly or disruptive conduct, at any place in the Grounds or in any of the Capitol Buildings with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress, or the orderly conduct in that building of a hearing before, or any deliberations of, a committee of Congress or either House of Congress." One photo in the "Rule 5" packet shows Mr. Mark Sahady in the Capitol merely looking on, with a blank expression on his face. There is one other photo of him outside, smiling, with a sign that says "CCP seeks World Domination," which is presumably a reference to Communist China. This not close to evidence of "utter[ing] loud, threatening, or abusive language, or engage in disorderly or disruptive conduct, at any place in the Grounds or in any of the Capitol Buildings," let alone with intent "to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress."

      c. The point of this extended discussion the merits, which case law holds to be least important of the factors, is that given Mr. Mark Sahady's chances, he is highly likely to not be a flight risk so that he can make his case.

(3) the history and characteristics of the person, including—
(3)(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings;

      a. Person's character—Mr. Mark Sahady has an honorable character and served our nation by serving in the military, including Aphganistan;
      b. Physical and mental condition—Mr. Mark Sahady suffers from high blood pressure and is a high risk for COVID-19—detention would make him more susceptible to risk;
      c. Family ties-Mr. Mark Sahady lives with his parents and has strong connections.
      d. Employment: Mr. Mark Sahady is a computer programmer. While he just lost his job, we are optimistic he will get good work again—he certainly is not in a such a pinch he would resort to crime.
      e. Financial resources: Mr. Mark Sahady has a good savings.
      f. Length of residence: Mr. Mark Sahady has been in the community a long time, for years.
      g. Past conduct: Mr. Mark Sahady has not been convicted of a crime, nor plead to facts sufficient as is the phrase in Massachusetts' state court.
      h. History relating to drug or alcohol abuse: Mr. Mark Sahady has no substance abuse disorders.
      i. Criminal history: As stated, Mark Sahady has not been convicted of any crimes.

---

there are many news articles about "inside jobs." The point is this—when such a sea of humanity was allowed in with the opening of the doors and seeming approbation by so many Capitol Police, it will be a veritable Sisyphean task for a prosecutor to have a distinguish between those at the Capitol that appeared to be Storming the Bastille, and those at the Capitol that appeared to be sauntering past the functional equivalent of a New York City doorman with a cordial exchange and perhaps a "selfie" for Facebook. At trial, the prosecution will have to prove beyond a reasonable doubt that not only was the area that Mr. Mark Sahady was actually *still* "posted, cordoned off, or otherwise restricted area" when he walked through the door, but that it is beyond a reasonable doubt that Mr. Mark Sahady would have known the area was "posted, cordoned off, or otherwise restricted area." It can't be strict liability crime.

      j.    Record concerning appearance at court proceedings: Mr. Mark Sahady has not ever "jumped bail" or fled before, those he was once charged with a crime many, many years ago.

 3(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law—Mr. Mark Sahady is not on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law. As stated, he has not been convicted of a crime.

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release: Mr. Mark Sahady walked unmolested into the Capitol when it appeared to be open to the public. When asked to leave by the Capitol Police, he did so. He is up against two misdemeanors, neither of which involve charges of violent crimes. He is not *any* danger to any person or the community, let alone a serious one.

6. Whereas, while pursuant to 18 USCS § 3142(c)(1)(B)(xiv) this court could condition personal recognizance on "satisfy[ing] any other condition that is reasonably necessary to assure the appearance of the person as required and to assure the safety of any other person and the community," a restriction on Mr. Mark Sahady's First Amendment activity (particular rights of free speech, assembly, and to petition government), is neither "reasonable" nor "necessary."

    a. In one case regarding bail and the First Amendment, the court said, "First Amendment freedoms are delicate and vulnerable, as well as supremely precious in our society and they need breathing space to survive." *State v. Braun,* 152 Wis. 2d 500, 509 (Wis. Appeals Court 1989), quoting *N.A.A.C.P. v. Button,* 371 U.S. 415, 433 (1963).

    b. It is respectfully maintained that 18 USCS § 3142(c)(1)(B)(xiv) is substantially overly broad with respect to regulate free speech as a condition of release, and with respect to the First Amendment, not only would Mark Sahady's speech be impacted, but those of others would be as well, and Mark Sahady has standing in the unusual situation of substantial overstep to claim that not only is the statute to vague so as to interfere with his right to free speech, but he may stand in the shoes of others and attack the statute as being substantially overly broad. "The First Amendment doctrine of substantial overbreadth is an exception to the general rule that a person to whom a statute may be constitutionally applied cannot challenge the statute on the ground that it may be unconstitutionally applied to others." *Massachusetts v. Oakes,* 491 U.S. 576, 581 (1989). "Satisfy[ing] any other condition that is reasonably necessary to assure the appearance of the person as required and to assure the safety of any other person and the community," is unconstitutionally vague and overly broad as a way to regulate First Amendment protected activies of speech, assembly, and petitioning government, and is therefore unconstitutional as applied to restricting First Amendment activity.

    c. The government wishes to restrict Mr. Mark Sahady's political speech as a condition of release, not unlike the abortion protestors in *State v. Braun,* 152 Wis. 2d 500 (Wisconsin Appeals Court 1989) that were forbidden to go back to the abortion clinic to protest: such conduct is the acme of an unconditional prior restraint.

    d. In *State v. Braun,* the Wisconsin Appeals Court said, "We reject the view that a person charged with a crime, but not convicted, forfeits his or her First Amendment rights." *State v. Braun,* 152 Wis. 2d at 515. The court called this "extraordinary interference." State v. Braun, 152 Wis. 2d at 516.

e.  "Conditioning pretrial release on the relinquishment of constitutionally protected rights in circumstances where the conditions are not necessary to satisfy legitimate governmental purposes would constitute excessive bail in violation of the Eighth Amendment."  *United States v. Arzberger,* 592 F. Supp. 2d 590, 605-606 (S.D.N.Y. 2008).

f.  So too, Mr. Mark Sahady respectfully asserts that this court should so reject the view that a person charged with a crime, but not convicted, forfeits his or her First Amendment rights, that the Government will be making, all the while arguing that while Mr. Mark Sahady has his lips taped, or can't go near state of the federal capitols, or attend protest, that this is not a prior restraint.

g.  The government seeks what is overtly classic content-based speech regulation (if Mr. Sahady went to a park to talk about baseball, he would not violate the government's conditions, if he went to a park to protest he would violate the proposed conditions.

h.  Finally, the government is essentially engaging in *viewpoint* speech regulation masquerading as content-based regulation.

i.  While the proposed conditions of release are overtly content-based (one has to look at the content of the speech to see if it applies, and it is not a time-place-or-manner restrict), the real reason is to limit Mr. Mark Sahady's speech which is in support of Donald Trump, and opposition to Mr. Sahady's perceived and honestly held belief in presidential irregularities or election fraud.

j.  Viewpoint discrimination is always unconstitutional, unlike content-based regulations which in theory could pass strict scrutiny, but which are often "strict in theory, fatal in fact."

k.  Whether it is a sham content-based regulation, or a sham content-neutral regulation (such as stay away from the capitol or stay away from a park), when the real reason is viewpoint regulation, courts must stand vigilant and not allow it.

l.  "Viewpoint discrimination is . . . an egregious form of content discrimination." *Rosenberger v. Rector & Visitors of the Univ. of Va.,* 515 U.S. 819 (1995).

m.  "The government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." *Rosenberger v. Rector & Visitors of the Univ. of Va.,* 515 U.S. 819 (1995).

n.  Even the interiors of capitols have been held to be public fora. *E.g., Act-Up v. Walp,* 755 F. Supp. 1281, 1287 (1991), "There is no doubt about the Pennsylvania Capitol's status as a public forum, particularly the rotunda.

**It is respectfully moved that Mr. Mark Sahady be release on his own personal recognizance other than he not leave the United States of America.**

**It is respectfully moved that Mr. Mark Sahady not have any restrictions on his First Amendment Activity, that there be no limit on what he says, that there be no limit on whom he associates with for purpose of free speech, and that there be no limit on where he can say it, including state capitols or the federal capitol.**

Dated this Thursday, January 21, 2021

Attorney Rinaldo Del Gallo, III
PO Box 1082
Pittsfield, MA 01202-1082
(413) 445-6789
BBO 632880
RinaldoDelGallo@gmail.com

CERTIFICATE OF SERVICE

I, Attorney Rinaldo Del Gallo, III, hereby certify that on Thursday, January 21, 2021, a copy of this document was e-mailed to the Honorable United States Attorney William Bloomer of the United States Department of Justice at william.bloomer@usdoj.gov, just at about 5:10 AM.

Attorney Rinaldo Del Gallo, III
PO Box 1082
Pittsfield, MA 01202-1082
(413) 445-6789
BBO 632880
RinaldoDelGallo@gmail.com

Thursday, January 21, 2021